Case number 23-5100. Lester A. Leach, Appellant v. Janet L. Yellen, Secretary of the Treasury. Mr. Selden for the Appellant. Mr. Simon for the Appellant. Good morning, Mr. Selden. Good morning. David, please the court. This is really a very straightforward case that the government obscured very deftly. What I'd like to do, if I may, in beginning, I know that there are issues that the court may or may not be interested in. I would like to just highlight the three that I think are, and then we can go wherever the court would like us to go. The first is that Mr. Leach was not just placed under investigation. He was simultaneously relieved of duties, involuntarily reassigned, and his position was taken apart so he would never be able to go back. That is tangible harm under any scenario, and this circuit has held that numerous times. The reason we put the first section of our reply brief and devoted it to Mr. Leach's we all know in the government that may or may not matter, but he did have $45,000 and more important than that, the narratives that are in there show that what the government has argued that he did, he was abusive, he was this or that. Those narratives say that he is, he was commended for superb leadership, treating each division member with respect and embracing EEO diversity. The supervisors Bailey and O'Connor admitted that those were accurate when they were deposed. This is powerful evidence of discrimination, retaliation under Stowe and Sezalski. Nothing in those could be overridden by a phone call or two while Mr. Medina was on leave. If anyone came to this court or a district court or any court and said it was a hostile work environment because my boss called me a couple of times when I was on leave, knowing how many times the boss had been sympathetic, it would be laughed out of court if you were lucky. You would be sanctioned for bringing a case like that. That's not the standard though as to whether it was actually a hostile work environment. Indeed, the standard is that they have reason to refer it for investigation. Well, I think that's part of it and the referral to investigation is important. First of all, this is a man with a superb record who winds up being investigated by Inspector General. That's really the core question. We know because emails that are in the record show that Mr. Bailey was aware. He praised for the same years, it was like six weeks before getting the attention of his previous case, he was praised for bringing Mr. Medina on board. He was praised for, Mr. Leach promoted him from temporary to permanent. Bailey and O'Connor complimented for that. If every single person who had an employee who filed an email complaint against them wound up at the Inspector General's office, no employer could survive. But there's a standard or guideline that was cited by your friends on the other side about when referrals to its office of the Inspector General are to be made. They said this fell within those guidelines. Are you disputing that this fell within those guidelines? What I'm saying is this Judge Wilkins, it's undisputed that that document, that alleged order was not disclosed and disclosures not produced during discovery. And as they themselves have said, not relied upon by giving, by referring Mr. Leach. The cases in our brief Stanley versus Edmonds by this circuit, it is plainly not admissible for any substantive person purpose. The government has had two opportunities to say that they produced this in the district court and before this court, it was clearly an issue. They have never said that. Their response has been, nobody relied on it. Let me tell you the prejudice that works from that, if I may. That may say that we didn't have the opportunity to look for, take discovery, whether it's positions, whether it's documents, whether it's from the Inspector General on whether this is really what happens. And what we know is that when the time came to make that referral, Mr. O'Connor chimed in with Mr. Modell right after the chief counsel said treasury department wants all EEO complaints that involve the top of the, of the mint referred to it for examination. That Mr. O'Connor chimed in and said, this has, this is potentially criminal misconduct. If I could take a step back though, surely an email complaint from a subordinate, if it alleges something extremely serious, could spark an investigation, a suspension, et cetera. And I guess where we are is that there is sort of an objective basis for the employment actions that were taken, which was that we had a very serious complaint from a subordinate Medina. We decided to investigate that. And this is what happened after that. And then it kind of shifts to you to say, no, actually you saying that what motivated all this was the complaint from Medina and you taking it seriously. That's a pretext. What actually was going on here is that you were retaliating against my client for prior EEO complaints, or it was race discrimination. What's your best evidence that the real motivating factor for all of these employment actions was not what they said it was, which we were just investigating this very serious allegation, but in fact it was race discrimination or retaliation. There's nothing very serious in that email. Mr. Medina. If you could just not fight my hypo, what is your best evidence? I think there's a great deal actually. I think one of the things, and the most important thing is probably the performance appraisals, which were admitted to be true, including his treatment of Medina. But that's not evidence that this is retaliatory or race discrimination. Well, it's, it is showing that it is untrue and untrue under ACA and RE and ACA primarily is showing the untruth of this, the lack of belief. You mean the allegations from Medina were untrue? No, I'll even accept them as true, which they were not. But what I'm saying is that What's untrue? There is, that management took this serious. We have a whole section of the brief on why Medina didn't believe any of this, and even email showing that Bailey shouldn't have either. But even assuming they were, you are placing, the district court has to place reliance on the interpretation of how serious they were by Bailey and O'Connor. So that's your strongest piece of evidence that the actual motive was retaliatory or race discrimination, that it's untrue that management took this seriously? There's quite a bit. There's the meeting between the chief counsel. There was nothing decided to begin with before the meeting with the chief counsel when she said, these should go to the treasury department. There is no evidence that there was an administrative investigation before then. And the government has changed its tune as it went along. It first said they had commissioned an administrative investigation before the case. It seems like you're trying to prove this by negative implication, because there's no affirmative action of race discrimination or retaliation, and you're trying to infer it from the fact that you don't think it's true that they took it seriously. I'm just trying to understand your theory. Yes, I mean, there's no one. No, there's just many people who are untruthful about it. I'm just following what Brady and Acas say, which is to begin to chip away at it, more than that here, with circumstantial evidence. This is the judge's primary decision below. He is ruling that Leach was already under investigation before the referral was made to the IG. We know, number one, that Bailey said in an affidavit, that's not possible. It can't have been done. Under the Mint's policies, it can't have been done. In the affidavit, Mr. Bailey started out by saying, I commissioned, I initiated an administrative investigation against him on the 7th, except he can't do that. It can't be done by him. It is only the people at the very top who can do that. That's one. We know, and this is part of, I think, a very significant part, that when a district court or any court looks at summary judgment, it has to examine the whole record, not just part of it. One of the things that the district court did not look at was that simultaneously, when Mr. Leach was being subject to investigation, Chief Dickerson, an African-American woman who had filed an EO complaint against David Modell, she was placed under administrative investigation when her employees, all of them, many of them, 10, 15, 20, complained about a hostile work environment toward her. When one of the deputy Mint directors, Mr. Peterson, became aware of that, he directed Mr. Bailey to do a cultural assessment, which is just a very low-level thing. Mr. Modell got on the phone with Mr. Bailey and ordered him to place Chief Dickerson under administrative investigation. When she was cleared and O'Connor and Bailey wanted to return her, Modell ordered them not to. When that happened that way, they gave affidavits in the EO case that were false, and they said she was returned to her position, even though Modell had said, don't ever return her to her position. There was other things, too. There was that Mr. Leach's duties, the most responsible ones, were taken away first for a year, and on involuntary detail. There was no reason he couldn't have been given good work to do. He was a grade 15. No one ever said he was not technically capable. No one ever has. In fact, I believe they admitted it. He has given an affidavit that he had so little to do, a declaration, so little to do, that he was watching CNN a lot of the time, some of it. There was nothing else for him to do. When they involuntarily detailed him, he was working way below his pay grade. All of these things, if you were legitimately doing this to somebody, you wouldn't basically destroy the job that he occupied in violation of Mint and Treasury policies, which is not denied. You would not be doing all of these things. Can I say someone else sat in a meeting and decided that this was, you know, the question is not whether someone else sat in a meeting. The investigation before the referral to the inspector general's office. That's the question. And there's no evidence of that. And what there is direct evidence of, it really is not even subject to a burden-shifting analysis. It is direct evidence that the chief counsel said, it's an EEO complaint with the potential to affect the Mint negatively. We have to refer it to the wants to clear up things for the new administration that actually wasn't even sworn in at that time. That's when O'Connor chimed in and said we should refer it. It's their potential here for criminal misconduct. There is no evidence that another investigation was commenced before then. And in fact, Bailey gave an affidavit of that once. And when in litigation, it became clear that that hadn't happened, the government changed what it said. The government even said, and I may add this, it's undisputed that when Mr. O'Connor was in touch with the EEO counselor and they asked him what would have been done if the IG didn't pick up the case, he said we would conduct what's known as a routine management inquiry. He did not say that we, as the government's position is now, that we had already decided to place him under investigation. It's just shadow boxing that goes on again and again. And I believe that what the district court did below was an error and not to be done because it picked things out of the record that supported them. We have the testimony of Mr. Modell at the meeting where the chief counsel said, you know, let's send this to the IG. And O'Connor chimed in, it's criminal misconduct. Except O'Connor testified that he was never there. He testified in, he even testified he never met with them. Bailey said when he suspended, when he suspended, or he proposed to suspend Bailey, I'm sorry. When he proposed and O'Connor put it in place, all they were doing was following through the IG's recommendation to suspend him. They did what it proposed. They did no such thing. IG's offices, government-wide, do not do that. They give facts and they let the agency decide. That's where the record went on here. All right. If my colleagues don't have any questions, let's end it there and we'll give you a couple minutes. Thank you. May it please the court, Jeremy Simon for the appellee. Mr. Leach does not dispute that the type of allegations raised by Mr. Medina, ongoing hostile work environment over an 18-month period, meet the serious misconduct threshold under the men's policy for a formal administrative investigation. Mr. Leach, in response to Judge Wilkins' question, I believe did not dispute that the OIG criteria for reporting potential abuse of authority to the Office of Inspector General was met here. And by opening an investigation, the Office of Inspector General confirmed that its criteria, in fact, had been met. Whether the Mint officials relied on the OIG directive or not as a material, their action was consistent with what that policy stated and was consistent with how the OIG itself treated this matter. Now, there is no exception in the administrative investigation policy that misconduct allegations should be ignored because the alleged harasser had favorable performance ratings. Mr. Medina's allegations of what he claims to have experienced under Mr. Leach are not diminished by Mr. Leach's prior ratings. There's no exception under the administrative investigation policy that misconduct allegations should be ignored based on whether or not a supervisor believes the allegations or not. Now, the record reflects that Mr. Bailey considered the allegations to be serious, and that is the reason for the referral. And ultimately, it's more fair to Mr. Medina, Mr. Leach, and Mr. Leach's management for this to be an administrative investigation done by a neutral third party. Now, Mr. Leach also had been warned in November 2014 that hostile work environment would not be tolerated, and Mr. Medina's allegations suggested that Mr. Leach was not complying with that warning. So, the only way to determine how to address this issue about Mr. Leach was to investigate and find out. Now, in terms of the OIG referral, Mr. Medina's allegations in the context of Leach's past history elevated those allegations to potential abuse of authority, and then IG agreed. So... The friend on the other side says that there's reason to, I guess, doubt that they really considered the matter that serious. And one of the points that he just made was that, I think he said that O'Connor testified that they were not present at this meeting while others said that O'Connor was. Can you just factually tell me what the record demonstrates on that point? Yes. So, the record reflects that Mr. O'Connor briefed Mr. Modell about his Modell and Gentry. Where there is an inconsistency is whether Mr. O'Connor met with Modell and Gentry together or separately. But the substance of what was communicated is not in dispute. Mr. Modell didn't take a position. Chief Counsel Gentry gave guidance that was consistent with referring the matter to the IG. And those... See if I can help the court with the record here. JA 395 to 97, and also JA 484 to 488 are the approximate pages, I believe, that chronology is laid out. But we lay it out in our brief as well. So, fundamentally, you have reasoned basis for referral based on objectively serious allegations. You have an IG making an independent determination to investigate, and then you have an independent IG investigation. I'd like to, if I could, address the points that Mr. Sullivan made. First, this issue about whether Mr. Leach had been placed under an administrative investigation on January 9th, 2017, when he got back from holiday leave. Mr. Leach admits in response to the local Rule 7H statement, which is at SJA 346, that what he was told was that Mr. Bailey intended to request an administrative investigation. In terms of Mr. O'Connor... Mr. Sullivan saying Mr. O'Connor admitted somewhere that had the IG referred it back, only a management inquiry would be conducted. That's not reflected in any of the competent evidence in the record. There's a contemporaneous email from January 9th, January 10th time period, in which there's a specific reference to duties while you're under an AI. And again, as I've already mentioned, that's at JA 376 to 77. And as I've already mentioned, Mr. Leach has admitted that what he was told on January 9th was an intention to place him under an AI, not that he was already technically under one. In terms of the Dickerson administrative investigation that Mr. Leach... I'm sorry, Mr. Sullivan references, Ms. Dickerson was alleged to have committed... created a hostile work environment and administrative investigation was initiated. But it was initiated before Ms. Dickerson had ever engaged in EO activity. That's at SJA 484 to 497. So that doesn't establish that any retaliatory motive that runs contrary to an argument that there was retaliatory motive at play. Unless the court has any further questions? What's your response to the intentions about the, I guess, this guideline not being produced in the district court and not having an opportunity to respond? Well, that order is publicly available and I'm not familiar with any motion being made in the district court to preclude use of that document or to strike it from the government's summary judgment filing or to seek some sort of discovery sanction where the document cannot be used. So I don't think that is an issue that's before this court. Thank you. Are there any further questions? We'd ask that the court confirm the judgment below. All right, Mr. Sullivan, you think you were over time, but we'll give you two minutes. Thank you. This is what I'm saying about the government very deftly handling this case. Government counsel said that there is a document, uh, an email confirming that Mr. Leach was put under investigation, uh, administrative investigation on January 9th and he pointed to page 376. Your colleague said was told that that was the intention, not that he was placed. Oh, correct. That's what your that Mr. Bailey concealed from Mr. Leach until March that he had been referred to the Office of Inspector General. This is part of concealing the process that he, excuse me, that's just part and parcel of that. Um, when they're talking about Dickerson and not having filed an EEO complaint first and it couldn't be retaliation, it's in, I don't remember which brief, but that, uh, she filed more than one complaint and she was complaining about retaliation. The only thing I will do with the moment or two I have left is simply clear something up. We noted this in our Rule 28J letter about how there was, um, something wrong in the reply brief and we noticed, uh, later that it was in this brief opening brief as well. On page 23 of the situation with Porter where it said things that pretend serious career consequences without tangible harm are actionable under Burlington Northern. What it should say on 37 of the reply, I'm sorry, 23 of the reply brief, 37 of the opening brief should say low-level disciplinary actions are not actionable and discipline is not enclosed. And that's very important. Sorry for not having gotten that straight. We picked it up as we were going. All right. Thank you. We'll take the mat here on the
judges: Wilkins, Walker, Pan